ShaCKLEfobd, J.,
delivered the opinion of the Court.
It appears from this record, John H. Pemberton, a citizen of Virginia, recovered a judgment on the 3d of October, 1859, in the Shelby Circuit Court, against Seabrook, for about $3,700, upon acceptances of Sea-brook & Carson. One for the sum of $800, drawn *58 by Pemberton on them; and tire other for $2,527, drawn by Ayres & Withers. The interest of Withers in the debt of Ayres & Withers, each being entitled to one-half, was transferred to Pemberton; and to avoid expense, suit was brought in the. name of Pem-berton on the drafts, and judgment was recovered as aforesaid. Seabrook and Carson were insolvent. The execution was returned nulla bona. Pemberton and Ayres, by the advice of counsel, agreed to file a bill in the Chancery Court, at Memphis, to redeem certain real estate formerly belonging to Seabrook. Previous to filing the bill it became necessary to raise the money to redeem the property; and on the 7th of Nov., 1859, the note of Pemberton, payable six months after date, for $6,700, and indorsed by William Ayres and his brother -, was discounted by the branch of the Farmers’ Bank of Yirginia, at Danville. Pem-berton gave his check to Ayres for the proceeds, which was converted into gold, the balance of the amount necessary to raise the redemption money of $6,718, which he sent by Pemberton to Memphis, who took the receipts of Small & Fonte for the same. It appears, at the time the money was raised, Pemberton was in failing circumstances, his credit was bad, and he was unable to raise his share of it, for the redemption of the property. On the 23d of November, 1859, the bill was filed, in the name of Pemberton, and a tender .of the redemption money, in gold, $6,713, was deposited by the attorneys with John C. Lanier, C. & M. of the Chancery Court. Shortly before the note matured, Pemberton transferred the receipt, and *59 all claim under it to the fund, to William Ayres. The attorney’s receipt and assignment, are as follows:
“Received of John H. Pemberton, $6,713, now deposited, in gold, in the Gayoso Savings Institution, for tbe purpose of making tender for the redemption of Seabrook’s & Carson’s 865-100 acres of land. Nov. 15, 1859. Small & Ponte, Att’ys at Law.”
Endorsed, “Danville, April, 14, -I860.”
“I transfer and assign the within receipt for $6,713, to William Ayres, for value received.
“John H. Pembeeton.”
This was forwarded by Ayres to his attorneys, Small & Route, who gave notice to Lanier & Carson. In June, 1860, Ayres informed -Lanier, that Pemberton had transferred to him all of his interest in the lands in suit, as well as the money deposited. On the 21st of June, 1860, Pemberton made a deed of trust to Dabney, which was registered in Yirginia, in which he conveyed, to secure his creditors, his interest in the lot which was the subject of controversy in the suit aforesaid; also, the money which was deposited with the Clerk & Master. He made a subsequent assignment of the judgment and money to William Ayres, which was registered on the 2d of August, 1860. On the 2d of August, Small, the attorney, about 9 o’clock, A. M., 1860, deposited with the Clerk & Master, the receipt of Small & Eonte, which was indorsed by Clerk, and filed at 1 o’clock. On that day, at 2 o’clock, P. M., Withers & Yates filed their bill against John H. Pemberton, as a non-resident debtor, alleging that this fund of $6,713, was in the hands of the Clerk *60 & .Master, and praying that the same be attached. The attachment was ordered to he issued, and was issued by the Deputy Clerk & Master, and came to the hands of the Sheriff, who made the following in-dorsement: “Came to hand on the 3d of August, 1860; executed on the 7th of August, on J. C. Lanier, Clerk & Master, by making known to him the contents within.” Afterwards, on the 27th of January, 1862, Withers & Yates filed their amended supplemental hill against Pemberton, in which the facts averred in the original bill are set forth; they show a large indebtedness of Pemberton to them, and aver that the money paid into the office, is the property of Pemberton; that the defendants in the original bill filed by Pemberton, refused to receive the redemption money; and that since the filing of the original bill, on the 2d of August, 1860, the suit of Pemberton against Seabrook and others, was dismissed, and that the claim was subject to the payment of their debt; further alleging the fund was claimed by Ayres & Dabny, and that they had no right to it. On the 18th of September, 1860, William Ayres pled his original bill against John H. Pember-ton, Yates & Withers, in which he claims the fund of $6,713, heretofore referred to; alleges it was a joint enterprise, raised by and through his credit, for the purpose of redeeming the land of Seabrook; that the suit was brought in the name of Pemberton, for the purpose of saving expense and trouble; alleging that Yates & Withers had notice of the assignment and his equities, before the filing of the attachment bill. This bill was answered by Withers & Yates, who denied the *61 allegations of tbe bill, and filed their answer as a cross bill, averring that the transfers and assignments were fraudulent in law; not being registered in Yirginia, were void as to creditors. It appears from the proof, Withers & Yates had notice in Yirginia, of the transfer or assignment of the money of Pemberton, at Memphis, to Ayres, before the filing of the attachment bill. Upon the maturity of the note of $6,700 referred to, it was paid by Ayres.
The several causes were consolidated, and heard together. The Chancellor decreed, that Ayres recover in proportion to his interest in the judgment against Sea-brook, and Withers & Yates should recover the interest of Pemberton; from which decree, both parties have appealed to this Court.
The first question presented for our consideration, is: Was the money now in dispute, the $6,713, subject to be attached? For the proper elucidation of this question, it becomes necessary to examine the equities of William Ayres and his legal rights. He and Pem-berton, in the name of the latter, had recovered a judgment for a joint debt. The only prospect of recovering the money, was to redeem the land of their insolvent debtor. To do this, a" large sum of money had to be raised. Pemberton was in failing circumstances, and without credit. Ayres was a Director in the Bank, and a man of means. Pemberton’s note was executed for the amount necessary to be raised, and indorsed by William Ayres and his brother, Samuel, payable in New York, and presented at the Branch of the Farmer’s Bank at Danville; and from the proof *62 of the Directors and Cashier, the note was discounted upon the credit of Ayres and his brother. Pemberton was without credit. The proceeds were checked out, and changed into gold, by Ayres, who sent Pemberton with it to Memphis, who delivered it to the attorneys, Small & Poute. The bill was filed, of Pemberton against Johnson, in pursuance of the previous agreement, and the Money paid into the office of the Clerk & Master, under orders of the Court. In this transaction, Pemberton and Ayres were joint share-holders of the fund, and were equally entitled to any advantages that may have resulted from a successful prosecution of the suit for the redemption of the land. After paying the amounts of the original judgments, in adjusting the accounts between them, their rights would have been equalized, and the proceeds of the property, • when sold, would be held bound, by a court of equity, for the excess paid -by either; and if one of the parties had become insolvent, or in failing circumstances, he would not be permitted to receive any part of the fund, until the joint-drawer was re-imburs-ed for the excess of advances made by him, above his one-half of the consideration. “This is not a lien or mortgage, but a principle of equity, producing the same results:” 2 Sneed, 395; 5 Hum., 49; 2 Hum., 185.
The case in 2 Humphreys, was one of joint ownership of slaves, and a creditor of one joint-owner, asking the payment of his debt out of the joint fund. The Court say, the complainant, who is a creditor, seeks to have the share of the debtor, is entitled to have no larger share of the property for that purpose, *63 than tbe debtor could obtain, were be seeking to have partition of tbe property. Upon the same principle,' in a partition between tenants in common, a court of equity will not grant petition, without making a party, who has received more than his share of the rents, account for them: 6 Mad., 223. The same principle was recognized and settled by this Court, in 2 Head, 80, in which the Court say: “Partners in land have an equity against each other, for the purpose of producing equality among themselves; and this equality fastens itself, and is a lien upon their respective interests in the partnership lands, of which neither can be deprived by the other.”
By the transfer of the 14th of April, 1860, the legal title to this fund in Court, by the transfer of the receipt of Small & Foute, by Pemberton to Ayres, vested the legal title in Ayres in the property. Pemberton is estopped by his act, and no creditor of his can reach it, except through him, unless it was a fraudulent transaction between the parties. The case of Alexander vs. Wallace, 10 Yerger; and Nolan vs. Crook, 5 Hum., 312; and Hayne vs. Yates, 2 Head, 598, recognize the right of transferring a debt, by assigning the receipt of the attorney for collection. In the case of Alexander vs. Wallace, 10 Yerger, it appears, Joseph Wallace did not have possession of the fund; he oñly had the receipt of Foster and Fogg, the lawyers, for the collection of the fund, then in the hands of Benson, a third party, that receipt having been delivered to Joseph Wallace by William Wallace, who was not entitled to the *64 fund, but belonged to the complainant, Alexander, who sought, as Withers & Tates do here, to prevent Joseph Wallace from getting the fund; but Alexander owed Joseph Wallace, and the Court refused to take from him the fund, and give it to Alexander, until the debts due him by Alexander were paid. The principle is now well settled, that a transfer of the attorney’s receipt, with notice to the party, vests in the assignee the right to the property transferred, and does not require registration, under the registry laws of Tennessee. Withers & Yates knew, at the time of the filing of the bill, the attorney’s receipt had been transferred to Ayres by Pemberton, and that he, Pemberton, had no interest in the fund. Secondly, the fund having been paid into Court — being in custodio legis — was it subject to be attached? This Court held, in the case of Elliott vs. Killebren, when money was tendered in redemption of land, and refused, and thereupon a bill was filed to enforce the redemption — that, while such suit was pending, the money is not subject to garnishment by third persons; but repiains subject to the decree of the Court. The money had not been paid into Court in this cause. The Court say we look upon this money somewhat as if it were in custo-dio legis, and think it ought, of right, to have been paid into the Chancery Court; so that Elliott, upon change of mind, might have taken it out: 8 Hum., —. To permit a fund that has been paid into Court, upon a bill filed to enforce the right of redemption, to be attached by third parties, would, in *65 many instances, defeat the right. The party holding the title, may elect at any time before the trial, to receive the fund and surrender the title; so, if, upon a final hearing, he should he compelled by the decree to give up his right of property in the land, he is entitled to the money paid in Court. If the right to attach this fund is permitted, it will, necessarily, destroy the privilege of the redemption of real estate, or greatly embarrass the remedy, which is against the policy of the government. We are of opinion, therefore, that the sum of $6,713, paid into Court, was not the subject of attachment. It is insisted, the complainants, Withers & Yates, are not in Court by their attachment bill; the suit is brought against Pemberton alone, as a non-resident debtor; and the Court, except by attachment upon his property, could take jurisdiction of the case. Neither Lanier, the Clerk & Master — in whose hands the fund was deposited — nor Ponte & Small, who managed and controlled the fund, are before „ the Court, or made parties to the bill; no injunction or extraordinary process issued, impounding the fund in the hands of the Clerk & Master; he was no party to the suit; and the attachment in the hands of the Sheriff, and his return thereon, created no lien on the fund. The debtor, or party in whose hand the 'fund is, is a necessary party to the attachment bill; and to make him a party defendant, there must be a prayer of process against him, and a levy of attachment, or the extraordinary process of the Court, impounding the fund to be attached. Mayor & Co. vs. *66 Pullam, 2 Head, 346. No attachment issued from the amended and supplemental hill filed in these causes. We are of opinion, therefore, the attachment and return of the process; gave the Court no jurisdiction of John H. Pemberton, and no valid judgment could have been rendered against him, on the original attachment bill filed in this case; and, therefore, the complainants in the attachment bill — Withers & Tates — are not in a condition to contest the legal or equitable claim of William Ayers to the fund. The question upon the registration of the instrument, and whether they are void or not, for want of registration in Virginia, in the view we have taken of the questions involved, it is unnecessary for us to determine.
The decree of the Chancellor will be reversed — the attachment bill of Withers & Tates; also, the cross-bill filed by them, will be dismissed, and a decree entered giving Ayers the fund.